1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6   TERESA A. METTLER,

7                                    Plaintiff,          Case No. 3:12-cv-05395RBL-KLS

8          v.                                            REPORT AND RECOMMENDATION

9   MICHAEL J. ASTRUE. Commissioner of                   Noted for February 8, 2013
    Social Security,
10
11                                   Defendant.
12
13
14

15          Plaintiff has brought this matter for judicial review of defendant's denial of her

16   applications for disability insurance and supplemental security income ("SSI") benefits.  This

17   matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

18   636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

19   Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

20   undersigned submits the following Report and Recommendation for the Court's review,

21   recommending that for the reasons set forth below, defendant's decision to deny benefits should

22   
23   be affirmed.

24                         FACTUAL AND PROCEDURAL HISTORY

25          On January 28, 2009, plaintiff filed an application for disability insurance benefits and

26   another one for SSI benefits, alleging in both applications that she first became disabled

REPORT AND RECOMMENDATION - 1

beginning December 28, 2008, due to depression, an attention deficit hyperactivity ("ADHD") disorder, anxiety, a posttraumatic stress disorder ("PTSD"), panic attacks, and problems with her hips and left ankle and knee. <u>See</u> Administrative Record ("AR") 23, 200.  Both applications were denied upon initial administrative review on June 17, 2009, and on reconsideration on April 9, 2010. <u>See</u> AR 23.  A hearing was held before an administrative law judge ("ALJ") on April 26, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 43-73.

On May 27, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 23-37.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 1, 2012, making the ALJ's decision defendant's final decision. <u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981, § 416.1481.  On May 3, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> ECF #1.  The administrative record was filed with the Court on July 6, 2012. <u>See</u> ECF #7-#8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in not finding her diagnoses of ADHD, a panic disorder and PTSD to be severe impairments; (2) in assessing her residual functional capacity; and (3) in finding her to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a

REPORT AND RECOMMENDATION - 2

1    claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

2    applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

3    that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

4    Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

5    772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

6    nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

7    and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

8    432, 433 (9th Cir. 1987)).

9

10        Substantial evidence is "such relevant evidence as a reasonable mind might accept as

11   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

12   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

13   supported by inferences reasonably drawn from the record.").  "The substantial evidence test

14   requires that the reviewing court determine" whether the Commissioner's decision is "supported

15   by more than a scintilla of evidence, although less than a preponderance of the evidence is

16   required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

17   admits of more than one rational interpretation," the Commissioner's decision must be upheld.

18   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

19   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

20   Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

21

22

23   _____

    [1] As the Ninth Circuit has further explained:

24        . . . It is immaterial that the evidence in a case would permit a different conclusion than that
         which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
25        substantial evidence, the courts are required to accept them.  It is the function of the
         [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
26        not try the case de novo, neither may it abdicate its traditional function of review.  It must
         scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
         rational.  If they are . . . they must be upheld.

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I.    <u>The ALJ's Step Two Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See id.</u>  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); <u>see also</u> Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. <u>See</u> <u>Smolen</u>, 80 F.3d at 1290.

The ALJ in this case found plaintiff had severe impairments consisting of a mood disorder, an anxiety disorder, a personality disorder, methamphetamine dependence in remission, and degenerative disc disease of the lumbar spine, status post laminectomy. <u>See</u> AR 25.  The

<u>Sorenson</u>, 514 F.2dat 1119 n.10.

REPORT AND RECOMMENDATION - 4

1   ALJ also found in relevant part at this step as follows:

2       At times the claimant has reported that her allegedly disabling mental and
        musculoskeletal symptoms began after she was assaulted [by a client] at work
3       in December of 2008.  But in her application materials she indicated, "I have
        never in my entire existence been able to hold a job for more than 2 [weeks] at
4       a time because my ADHD is so bad" (11E6).  She further reported that she has
        been in "constant pain with every step" she has taken since she was born,
5       apparently due to hip pain (11E7).  However, earnings documentation shows
        that the claimant worked at substantial gainful activity levels for several years
6       in spite of these allegedly lifelong impairments.  She has reported that she did
        not do well in school, but was not in special education, and was able to earn
7       50 credits at the University of Phoenix in business in psychology, though she
        had to read assignments over a couple of times (10F5-6).
8
9       The claimant alleges that her psychiatrist said she had PTSD after the
10      December 2008 workplace incident (4F23).  However, there is no evidence of
        anyone diagnosing PTSD relating to the events in 2008.  This diagnosis is
11      only repeated later, based on the claimant's self-report that she has the
        diagnosis.  There is a diagnosis of PTSD noted in 2003 (see 21F), but after
12      that there is no mention of it.  The claimant was found to not meet the DSM-
        IV [Diagnostic and Statistical Manual of Mental Disorders (4th edition)]
13      criteria for PTSD upon consultative psychiatric examination in March of 2010
        (see 26F).  Given this evidence, plus the lack of discussion of PTSD by any
14      treating doctor, I find that this is not a severe impairment.
15
16      Diagnoses of attention deficit hyperactivity disorder (ADHD) and/or attention
        deficit disorder (ADD) also appear throughout the record.  The claimant
17      presented to a treating physician in August of 2006 with a "concern about
        ADD" (4F4).  The doctor stated that her symptoms "may" be ADD (id.).
18      After that time, this is picked up as a diagnosis throughout treating physician's
        notes.  However, Group Health mental health providers did several
19      evaluations and did not diagnose ADD or ADHD.  Further, formal testing was
        conducted in 2003 (See 21F).  ADHD was noted as a possible diagnosis but it
20      was not diagnosed because the claimant was not viewed as a good historian
        (21F12).  There are no clinical findings that would support a diagnosis of
21      ADD or ADHD.  On the contrary, as detailed below, mental status exam has
        shown the claimant to be cognitively intact.  Thus, there is no evidence that
22      she has ever been "diagnosed" with ADD/ADHD and any "diagnoses" that
        appear in the record are based on her self-report.  Further, though the claimant
23      has been prescribed Adderall and Straterra, the record reflects evidence that
        she is manipulating her treatment providers regarding prescription of these
24      medications . . .
25
26      I find that there is no objective medical or other evidence to show that these
        impairments have caused or can be expected to cause more than minimal

REPORT AND RECOMMENDATION - 5

vocational limitations for a continuous period of at least 12 months. Accordingly, I find these impairments to be nonsevere.

Further, I find that even if PTSD and ADHD/ADD were found to be severe, they would not cause any additional functional limitations. The residual functional capacity detailed below accounts for the claimant's diagnosis of anxiety disorder. Treatment notes indicate that the claimant's reported difficulty concentrating may be related to her anxiety (See 24F18).

AR 26-27. Plaintiff argues the ALJ erred in finding her ADHD and PTSD diagnoses to be non-severe impairments, and also in failing to treat as a severe impairment her diagnosis of a panic disorder. The undersigned disagrees.

First while some physicians may have diagnosed plaintiff as having ADHD, one of whom also diagnosed him with a panic disorder (see AR 285, 291, 771, 779), as noted by the ALJ, there are no actual, objective clinical findings – such as mental status examination results – supporting those diagnoses (see AR 285, 291, 323, 325, 331, 337, 361, 386-89, 418, 420, 422, 424-25, 433, 441, 538, 542-43, 551-52, 555, 562, 568-70, 580-81, 586-92, 594-96, 617-18, 622-23, 626, 771, 778-79). More importantly for step two purposes, there are no clinical findings in the record indicating the presence of significant work-related limitations stemming therefrom.[2] See id. It is the presence of such findings, though, that is required to establish step two severity.[3]

---

[2] There is one mental health treatment note from a non-physician, in which plaintiff was provided with a global assessment of functioning ("GAF") score of 60, based in part on a diagnosis of "Attention Deficit Disorder without Mention of Hyperactivity." AR 552. "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34). A GAF score, however, is "a *subjective* determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted) (emphasis added). Thus, although a GAF score constitutes "relevant evidence" of the claimant's ability to function mentally, it is not objectively based. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). Indeed, the objective clinical findings contained in the above treatment note are essentially unremarkable, at least in terms of evidence suggestive of ADD. See AR 551.

[3] At step two of the disability evaluation process, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record:

REPORT AND RECOMMENDATION - 6

Accordingly, again for purposes of step two, the ALJ did not err in finding there was "no evidence" of a supported ADD/ADHD diagnosis, nor did she err in not finding the panic disorder to be a severe impairment.

As for the diagnosis of PTSD, the undersigned agrees with plaintiff that there is nothing to indicate that such a diagnosis must be linked to any one particular incident to be deemed a valid diagnosis. But plaintiff has not alleged, nor has she pointed to any evidence showing, her PTSD diagnosis is related to any other traumatic incident. Further, any error made by the ALJ in this regard is harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision."). This is because while plaintiff may have been diagnosed with PTSD on two occasions in 2008 and 2009 (see AR 331, 389), as noted by the ALJ, in a more recent evaluation report she was found by Aaron Hunt, Ph.D., to not meet the criteria for that condition:

> [Plaintiff] does not meet criteria for post traumatic stress syndrome related to the injury event or work related problems. Her subjective history provided no history of chronic stressors or symptoms suggesting the development of PTSD. She appears to become increasingly frustrated due to her work situation, interactions with other people and her interpretation of the workplace environment and the way she was treated rather than from ongoing threats or abuse. In fact, she appeared to minimize the impacts of interactions with [her workplace] client in comparison to her conflict with her workplace environment. Psychological profile suggests that her maladaptive personality traits and habit greatly affect her current presentation and likely affected her

---

A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. . . .

SSR 85-28, 1985 WL 56856 *4.

REPORT AND RECOMMENDATION - 7

and her actions in the workplace.  Moreover, it should be noted there are a number of inconsistencies in her report, minimal collateral history to support her claims and notable potential for secondary gain.

AR 582[4]; see Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of physician is based on independent clinical findings, it is within discretion of ALJ to disregard conflicting opinion in another physician's diagnosis). [5]

Plaintiff also points to the fact that based on his review of the record, John F. Robinson, Ph.D., found in mid-June 2009, that she suffered from an anxiety-related disorder evidenced by

---

[4] Dr. Hunt further opined in relevant part as follows:

. . . On a more probable than not basis, given the review of the information available, [plaintiff] does not meet the criteria for post traumatic stress disorder.  [Plaintiff] appears to have suffered a relatively minor injury that was not terrifying to her at the time.  Her level of anxiety and response appears to be more mediated by her frustration with her workplace environment rather than the result of trauma-related anxiety and fear of being attacked.

It should be noted that she recalled having the type of event recur on a regular basis, and did not report any trauma-related anxiety associated with those events either.

Both the medical record and her report appear to suggest she was very frustrated with [her] job, stated repeatedly [sic] that more related to work conditions and environment.  Testing supports the existence of maladaptive personality characteristics that have significantly contributed to her presentation.

I would opine on a more likely than not basis that her current problems are more related to her pre-existing personality issues in the context of work-related and financial stressors rather than a specific trauma or ongoing sequence of dramatic events.

She does appear to have disability conviction around this issue, and continually attempted to frame the situation in the context of experiencing a severe trauma.  In addition, malingering may be considered given the inconsistencies in her reported symptoms with her presentation, medical record and examination, as well as the potential for secondary gain.

AR 583.

[5] As argued by defendant, any error here is also harmless as the disability determination did not stop at step two, and – particularly in light of Dr. Hunt's opinion – plaintiff has failed to show that any limitations stemming from her diagnosed PTSD were not properly considered during the later steps of the sequential disability evaluation process. See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

REPORT AND RECOMMENDATION - 8

"[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress," and that Dr. Robinson assessed her with several work-related mental functional limitations based in part on that diagnosis. See AR 391-93, 400.  As discussed above, however, the ALJ did not err in giving greater weight to the opinion of Dr. Hunt, at least in regard to the existence of a PTSD diagnosis.  It is difficult to see the harm to plaintiff, furthermore, given that the ALJ gave Dr. Robinson's opinion "significant weight." AR 33.  For all of the above reasons, therefore, the ALJ's step two determination was proper.

II.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the following residual functional capacity:

REPORT AND RECOMMENDATION - 9

1

2

3

4

5

6

7

**. . . The claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit for a total of about 6 hours in an 8-hour workday, and can stand and/or walk for a total of about 6 hours in an 8-hour workday.  She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  She should never climb ladders, ropes, or scaffolds.  She can frequently balance.  She should avoid concentrated exposure to hazards.  She can understand, remember, and carry out simple tasks.  She should avoid working with the general public and can occasionally interact with coworkers and supervisors, but that interaction should be brief and superficial.  She should not engage in cooperative teamwork type work.  She needs routine work with few changes in that routine.**

8

9

10

11

AR 29 (emphasis in original).  Plaintiff argues the ALJ's RFC assessment is deficient, because the ALJ failed to include additional functional limitations stemming from the panic attacks that she has complained of having.  But plaintiff has not pointed to any specific functional limitations stemming therefrom that the ALJ has not already adopted.

12

13

14

15

16

17

18

19

20

21

22

23

Further, while plaintiff points to a letter from Andrea M. Repphun, M.D., in which she noted plaintiff had been having "worsening [anxiety-related] symptoms, including multiple panic attacks daily," and thus was "currently not able to perform her [past job's] tasks due to this anxiety," that opinion is clearly based on plaintiff's testimony and own self-reports. See AR 307; see also ECF #12, pp. 7-8 (citing AR 58-59, 329-31, 339, 342, 351, 383, 420, 422, 536, 563, 565, 569, 596).  But the ALJ found plaintiff to be not fully credible regarding her subjective complaints (see AR 29-33), a finding plaintiff has not challenged.  Accordingly, to the extent plaintiff's testimony and self-reports evidences the presence of limitations from her alleged panic attacks that are not already included in the above RFC assessment, the ALJ did not err in failing to adopt them.

24

III.    The ALJ's Findings at Step Five

25

26

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national

REPORT AND RECOMMENDATION - 10

economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the

testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines

(the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th

Cir. 2000).

     An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted).  The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

     At the hearing, the ALJ posed the following hypothetical question to the vocational

expert:

> . . . [A]ssume an individual of the claimant's age, education, and work history.
> Further assume this individual can understand, remember, and carry out
> simple tasks.  The work should be routine with few changes in the routine.
> She should avoid working with the general public, and can have occasional
> interaction with co-workers and supervisors, and shouldn't be engaging in
> cooperative or teamwork kind of work. . . .

AR 69-70.  In response to that question, the vocational expert testified that such an individual

would be able to perform other jobs. See AR 70-71.  Based on the testimony of the vocational

expert, the ALJ found that plaintiff could perform other jobs existing in significant numbers in

the national economy, and therefore that he was not disabled. See AR 36-37.

     Plaintiff argues it was improper for the ALJ to rely on the vocational expert's testimony

REPORT AND RECOMMENDATION - 11

here, because the ALJ "never questioned the vocational expert on any potential jobs based on the residual functional capacity she came up with." ECF #12, p. 8.  The mental functional limitations provided in the above hypothetical question, however, are substantially similar to those the ALJ included in her assessment of plaintiff's RFC.  Plaintiff also asserts the ALJ erred because she offered none of the physical funcitonal limitations she included in her RFC assessment to the vocational expert for consideration.  Plaintiff's counsel, however, went on to add the following functional limitations to the ALJ's hypothetical question:

> . . . [T]he limitation that she . . . lift or carry only 20 pounds occasionally, 10
> pounds frequently --
>
> . . .
>
> . . . Never climb ladders, ropes, or scaffolds, occasionally climb ramps or
> stairs, occasionally stoop, kneel, crouch, and crawl, and avoid concentrated
> exposure to hazards, and the need to alternate sitting with standing at will . . .

AR 71.  In response to those additional limitations, the vocational expert testified in relevant part as follows:

> . . . Well, the first job I identified was a medium occupation, so on the basis of
> limiting it to light work, that would be precluded, if we assume that to be true.
> And the other two jobs fit well within . . . your hypothetical, other than the
> sit/stand option . . .

AR 71-72.

The fact that the ALJ herself did not pose any non-mental exertional or non-exertional limitations,[6] therefore, is irrelevant, given that such limitations in fact were posed at the hearing, and the vocational expert had the opportunity to testify with respect thereto.  In addition, while it is true that plaintiff's counsel did not include, with the additional limitations he posed, the ability

---

[6] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b), § 416.969a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1), § 416.969a(c)(1).

REPORT AND RECOMMENDATION - 12

to sit, stand and walk for six hours in an eight-hour workday as found by the ALJ in his residual functional capacity assessment, that ability is completely compatible with the ability to perform light work,[7] which as noted above is how the vocational expert interpreted plaintiff's counsel's limitations.  Accordingly, the vocational expert's testimony was based on a set of hypothetical questions that adequately encompassed the ALJ's RFC assessment.

Lastly, plaintiff argues she should have been found unable to work, because in response to her attorney's question as to whether the hypothetical individual could maintain employment if that individual required "multiple, unscheduled breaks throughout the day," the vocational expert testified that "if there were a lot of unscheduled breaks, and they last for an undue period of time, where the [individual] essentially was just not being productive, [that individual] would not sustain [his or her] work." AR 72.  But the substantial evidence does not support the need for such unscheduled breaks throughout the day, particularly in light of the lack of harmful error in the ALJ's treatment of the record.  Plaintiff's argument is thus without merit.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as

---

[7] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 404.1567(b), § 416.967(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).  If a claimant is capable of performing light work, furthermore, he or she also will be found to be able to perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b), § 416.967(b).  A sedentary job, in turn, "is defined as one which involves sitting," which again is entirely consistent with the ability to sit for six hours in an eight-hour workday. 20 C.F.R. § 404.1567(b), § 416.967(b)

REPORT AND RECOMMENDATION - 13

well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 8, 2013**, as noted in the caption.

DATED this 23rd day of January, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14